# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE CARLYLE GROUP**<br>**The Corporation Trust Company**<br>**Corporation Trust Center**<br>**1209 Orange Street**<br>**Wilmington, DE 19801**<br><br>**CARLYLE VENTURE PARTNERS II, L.P.**<br>**The Corporation Trust Company**<br>**Corporation Trust Center**<br>**1209 Orange Street**<br>**Wilmington, DE 19801**<br><br>**CARLYLE GROWTH PARTNERS**<br>**The Corporation Trust Company**<br>**Corporation Trust Center**<br>**1209 Orange Street**<br>**Wilmington, DE 19801**<br><br>**BROOKE B. COBURN,**<br>**Managing Director,**<br>**Carlyle Growth Partners**<br>**1001 Pennsylvania Avenue, NW**<br>**Washington, DC 20004**<br>**Phone: (202) 729-5626**<br><br>**SONITROL CORPORATION,**<br>**a Delaware Corporation;**<br>**1000 Stanley Drive**<br>**New Britain, CT 06053**<br>**Phone: (860) 225-5111**<br><br>**SONITROL HOLDING CORPORATION,**<br>**a Delaware Corporation;**<br>**1000 Stanley Drive**<br>**New Britain, CT 06053**<br>**Phone: (860) 225-5111**<br><br>**SONITROL HOLDING, LLC,**<br>**a Delaware united liability company;**<br>**1000 Stanley Drive**<br>**New Britain, CT 06053**<br>**Phone: (860) 225-5111** | **Misc. Case No. _____**<br>**Related Case: U.S.D.C. for the Western**<br>**District of Washington (Tacoma), Case No.**<br>**C08-5350 RBL**<br><br>**JOINT MOTION OF THE NON-PARTIES**<br>**IDENTIFIED AS THE CARLYLE**<br>**GROUP, CARLYLE VENTURE**<br>**PARTNERS II, CARLYLE GROWTH**<br>**PARTNERS, AND BROOKE B. COBURN**<br>**AND OF DEFENDANTS TO QUASH**<br>**PLAINTIFF'S SUBPOENAS** |

**THE STANLEY WORKS,**
**a Connecticut Corporation;**
**1000 Stanley Drive**
**New Britain, CT 06053**
**Phone: (860) 225-5111**

**STANLEY SECURITY SOLUTIONS,**
**INC.,**
**an Indiana Corporation;**
**1000 Stanley Drive**
**New Britain, CT 06053**
**Phone: (860) 225-5111**

**SECUIRTYCO SOLUTIONS, INC.,**
**a Delaware Corporation;**
**1000 Stanley Drive**
**New Britain, CT 06053**
**Phone: (860) 225-5111**

**STANLEY CONVERGENT SECURITY**
**SOLUTIONS, INC.,**
**a Delaware Corporation;**
**1000 Stanley Drive**
**New Britain, CT 06053**
**Phone: (860) 225-5111**

**SONITROL FRANCHISE COMPANY,**
**L.L.C.,**
**a Delaware limited liability company;**
**1000 Stanley Drive**
**New Britain, CT 06053**
**Phone: (860) 225-5111**

                              **MOVANTS,**

**v.**

**SOUND SECURITY, INC.**
**a Washington corporation,**
**2221 California Avenue**
**Everett, WA 98201**

                       **RESPONDENT.**

Pursuant to Federal Rule of Civil Procedure 45(c)(3), the non-parties identified as The Carlyle Group, Carlyle Venture Partners II, Carlyle Growth Partners, and Brooke B. Coburn ("Mr. Coburn" and collectively, the "Carlyle Non-Parties"), together with the defendants in the underlying action (Sonitrol Corporation, Sonitrol Holding Corporation, Sonitrol Holding, LLC, The Stanley Works, Stanley Security Solutions, Inc., SecurityCo. Solutions, Inc., Stanley Convergent Security Solutions, Inc., and Sonitrol Franchise Company, LLC, collectively "Defendants"), jointly move for an Order quashing each of the subpoenas issued from this Court, through counsel for Plaintiff, Sound Security, Inc. ("SSI"), and served upon the Carlyle Non-Parties, relating to an action pending in the United States District Court for the Western District of Washington (Tacoma), encaptioned Sound Security, Inc. v. Sonitrol Corporation, et al., No. C08-5350 RBL (U.S.D.C., W.D.Wa. (Tacoma)) (the "Subpoenas"). The Carlyle Non-Parties and Defendants are entitled to an Order quashing this Subpoena because forcing compliance would (I) cause the Carlyle Non-Parties undue burden and (II) require the Carlyle Non-Parties to produce trade secrets and other confidential commercial information.

Specifically, the vast majority of the documents SSI seeks by its Subpoena are irrelevant. Moreover, they are generally within Defendants' possession, custody and control. Requiring any of the Carlyle Non-Parties to search for, review and potentially produce these same documents would be wasteful and expensive, and thus, would clearly cause them undue burden. The remainder of documents SSI seeks comprise trade secrets and other confidential commercial information for which SSI cannot meet the requisite standard of need.

This motion is timely pursuant to F.R.C.P. 45(c)(3)(A). It is filed prior to the date agreed upon by SSI for any of the Carlyle Non-Parties to respond to the Subpoenas.

3

WHEREFORE, each of the Carlyle Non-Parties and Defendants respectfully request that this Court enter an Order quashing the Subpoenas.

Date:  May 27, 2009                         Respectfully,

                                            LATHAM & WATKINS LLP

                                            _____
                                            By:  Allen M. Gardner, DC Bar ID # 456723
                                            E-mail:  allen.gardner@lw.com
                                            555 Eleventh Street, N.W.
                                            Suite 1000
                                            Washington, DC  20004
                                            Telephone:  (202) 637-2200
                                            Facsimile:  (202)637-2201

                                            *Attorneys for Non-Parties/Movants, identified as:*
                                            *The Carlyle Group, Carlyle Venture Partners II, Carlyle*
                                            *Growth Partners, and Brooke B. Coburn*

                                            STRADLEY RONON STEVENS & YOUNG, LLP

                                            _____
                                            Mark E. Chopko, DC Bar ID #410353
                                            E-mail:  mchopko@stradley.com
                                            1250 Connecticut Avenue, NW
                                            Suite 500
                                            Washington, DC  20036
                                            Telephone:  (202) 822-9611
                                            Facsimile:  (202) 822-0140

                                            Jeffrey D. Grossman
                                            E-mail:  jgrossman@stradley.com
                                            Christopher J. Lowe
                                            E-mail:  clowe@stradley.com
                                            One Commerce Square, Suite 2600
                                            2005 Market Street
                                            Philadelphia, PA  19103-7098
                                            Telephone:  (215) 564-8000
                                            Facsimile:  (215) 564-8120

                                            *Attorneys for Defendants*
                                            *Sonitrol Corporation, Sonitrol Holding Corp., Sonitrol*
                                            *Holding, LLC, The Stanley Works, Stanley Security*
                                            *Solutions, Inc., SecurityCo. Solutions, Inc., Stanley*
                                            *Convergent Security Solutions, Inc., and Sonitrol*
                                            *Franchise Company, LLC*

4

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE CARLYLE GROUP**<br>**The Corporation Trust Company**<br>**Corporation Trust Center**<br>**1209 Orange Street**<br>**Wilmington, DE 19801**<br><br>**CARLYLE VENTURE PARTNERS II, L.P.**<br>**The Corporation Trust Company**<br>**Corporation Trust Center**<br>**1209 Orange Street**<br>**Wilmington, DE 19801**<br><br>**CARLYLE GROWTH PARTNERS**<br>**The Corporation Trust Company**<br>**Corporation Trust Center**<br>**1209 Orange Street**<br>**Wilmington, DE 19801**<br><br>**BROOKE B. COBURN**<br>**Managing Director,**<br>**Carlyle Growth Partners**<br>**1001 Pennsylvania Avenue, NW**<br>**Washington, DC 20004**<br>**Phone: (202) 729-5626**<br><br>**SONITROL CORPORATION,**<br>**a Delaware Corporation;**<br>**1000 Stanley Drive**<br>**New Britain, CT 06053**<br>**Phone: (860) 225-5111**<br><br>**SONITROL HOLDING CORPORATION,**<br>**a Delaware Corporation;**<br>**1000 Stanley Drive**<br>**New Britain, CT 06053**<br>**Phone: (860) 225-5111**<br><br>**SONITROL HOLDING, LLC,**<br>**a Delaware united liability company;**<br>**1000 Stanley Drive**<br>**New Britain, CT 06053**<br>**Phone: (860) 225-5111** | **Misc. Case No. _____**<br>**Related Case: U.S.D.C. for the Western**<br>**District of Washington (Tacoma), Case No.**<br>**C08-5350 RBL**<br><br>**MEMORANDUM OF LAW OF THE NON-**<br>**PARTIES IDENTIFIED AS**<br>**THE CARLYLE GROUP, CARLYLE**<br>**VENTURE PARTNERS II,**<br>**CARLYLE GROWTH PARTNERS, AND**<br>**BROOKE B. COBURN AND**<br>**OF DEFENDANTS**<br>**IN SUPPORT OF THEIR JOINT MOTION**<br>**TO QUASH PLAINTIFF'S SUBPOENAS** |

**THE STANLEY WORKS,**
**a Connecticut Corporation;**
**1000 Stanley Drive**
**New Britain, CT 06053**
**Phone: (860) 225-5111**

**STANLEY SECURITY SOLUTIONS,**
**INC.,**
**an Indiana Corporation;**
**1000 Stanley Drive**
**New Britain, CT 06053**
**Phone: (860) 225-5111**

**SECUIRTYCO SOLUTIONS, INC.,**
**a Delaware Corporation;**
**1000 Stanley Drive**
**New Britain, CT 06053**
**Phone: (860) 225-5111**

**STANLEY CONVERGENT SECURITY**
**SOLUTIONS, INC.,**
**a Delaware Corporation;**
**1000 Stanley Drive**
**New Britain, CT 06053**
**Phone: (860) 225-5111**

**SONITROL FRANCHISE COMPANY,**
**L.L.C.,**
**a Delaware limited liability company;**
**1000 Stanley Drive**
**New Britain, CT 06053**
**Phone: (860) 225-5111**


                              **MOVANTS,**

**v.**

**SOUND SECURITY, INC.**
**a Washington corporation,**
**2221 California Avenue**
**Everett, WA 98201**

                              **RESPONDENT.**

2

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .........................................................................................................................2

STANDARD.................................................................................................................................7

ARGUMENT................................................................................................................................9

I.    REQUIRING THE CARLYLE NON-PARTIES TO SEARCH FOR, REVIEW AND
      PRODUCE DOCUMENTS OTHERWISE DISCOVERABLE FROM DEFENDANTS
      WOULD IMPOSE UNDUE BURDEN....................................................................................9

II.   SSI HAS NO SUBSTANTIAL NEED FOR THE CARLYLE GROUP'S
      CONFIDENTIAL COMMERCIAL INFORMATION NOR CAN IT
      DEMONSTRATE A NEED FOR DEFENDANT'S CONFIDENTIAL
      COMMERCIAL INFORMATION THAT OUTWEIGHS THE POTENTIAL HARM
      TO DEFENDANTS.............................................................................................................11

      A.    The Carlyle Group's Confidential Commercial Information.......................................11

      B.    Defendants' Confidential Commercial Information .....................................................13

CONCLUSION............................................................................................................................14

# TABLE OF AUTHORITIES

CASES

Digital Equipment Corp. v. Micro Technology, Inc.,
    142 F.R.D. 488 (D. Colo. 1992) ...........................................................................8

\* Flatow v. The Islamic Republic of Iran,
    196 F.R.D. 203 (D.D.C. 2000)..............................................................................7

\* In re Vitamins Antitrust Litig.,
    267 F. Supp. 2d 738 (S.D. Ohio 2003) ..................................................... 8, 12-13

Jones v. Hirschfeld,
    219 F.R.D. 71 (S.D.N.Y. 2003) ............................................................................7

Melder v. State Farm Mutual Automobile Ins. Co.,
    No. 1:08-CV-1274-RWS-JFK, 2008 WL 1899569 (N.D. Ga. Apr. 25, 2008)....................8, 10

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
    218 F.R.D. 423 (D. Del. 2003) .............................................................................7

Ponsford v. United States,
    771 F.2d 1305 (9th Cir. 1985) ..............................................................................8

Stevenson v. Stanley Bostitch, Inc.,
    201 F.R.D. 551 (N.D. Ga. 2001)..........................................................................8

Symetra Life Ins. Co. v. Rapid Settlements, Ltd.,
    No. 07-133, 2008 WL 597711 (E.D. Pa. March 4, 2008).......................................7

\* U.S. v. Nachamie,
    91 F. Supp. 2d 552 (S.D.N.Y. 2000)....................................................................8


RULES

F.R.C.P. 26(c)(1)(G) ....................................................................................................8

F.R.C.P. 45.................................................................................................................2

F.R.C.P. 45(c)(1) ...................................................................................................7, 12

F.R.C.P. 45(c)(3)(A)(iv) ........................................................................................7, 11

F.R.C.P. 45(c)(3)(B)(i).........................................................................................8, 13

F.R.C.P. 45(c)(3)(C)(i)...............................................................................................13

## MEMORANDUM OF POINTS & AUTHORITIES

Non-parties The Carlyle Group, Carlyle Venture Partners II,[1] Carlyle Growth Partners, and Brooke B. Coburn ("Mr. Coburn" and collectively, the "Carlyle Non-Parties"), along with all of the defendants named in the underlying action pending in the U.S. District Court for the Western District of Washington ("Defendants"),[2] respectfully submit this Memorandum of Law in support of their joint motion to quash the third-party subpoenas issued by Plaintiff, Sound Security, Inc. ("SSI"), to each of the Carlyle Non-Parties (the "Subpoenas"). The underlying action is captioned: Sound Security, Inc. v. Sonitrol Corporation, et al. No. C08-5350 RBL (U.S.D.C.,W.D.Wa.(Tacoma)). SSI served each of the Carlyle Non-Parties with a Subpoena, each of which was issued under this Court's jurisdiction and is in all events improper. (A true and correct copy of each of the Subpoenas is attached to the Declaration of Christopher J. Lowe, dated May 26, 2009 (the "Lowe Decl.") as Exhibits A-D, respectively.) For the reasons, discussed below, each of the Subpoenas should be quashed in its entirety.

## PRELIMINARY STATEMENT

Each of SSI's Subpoenas is grossly overbroad and, if enforced, would work an undue burden on its recipient – each a non-party in the underlying lawsuit. The Subpoenas seek from the Carlyle Non-Parties documents that: (I) SSI should be able to access from Defendants, if permitted to do so by the District Court overseeing the underlying litigation; and/or (II) constitute (A) The Carlyle Group's trade secrets and other confidential information for which SSI has no substantial need or (B) Defendants' trade secrets or other confidential information for which SSI cannot demonstrate that any purported need outweighs the potential harm to

---

[1]    The proper entity name is Carlyle Venture Partners II, L.P. and accordingly, it is referred to as such herein.

[2]    Defendants are Sonitrol Corporation, Sonitrol Holding Corporation, Sonitrol Holding, LLC, The Stanley Works, Stanley Security Solutions, Inc., SecurityCo. Solutions, Inc., Stanley Convergent Security Solutions, Inc., and Sonitrol Franchise Company, Inc.

Defendants of disclosure. In what can only be viewed as an effort to harass each of the Carlyle Non-Parties, the Subpoenas also seek production of numerous categories of documents that are plainly irrelevant to the claims at issue in the underlying litigation. As but one example, SSI seeks production of documents sufficient to reflect each and every investment each fund managed by The Carlyle Group has made between 2003 and the present, including the dollar and percentage amounts of each such investment, notwithstanding the utter irrelevance of those investments to the dispute between SSI and Defendants.

The liberal discovery rules embodied in the Federal Rules of Civil Procedure are not without limit. To the contrary, federal judicial authorities have uniformly disallowed – and quashed subpoenas seeking – discovery that amounts to a "fishing expedition." Those same authorities protect non-parties like the Carlyle Non-Parties from precisely the sort of improper discovery demands that SSI has served. SSI is not allowed to unduly burden the Carlyle Non-Parties by demanding documents that are irrelevant to the underlying dispute, available from parties named in that action, and constitute The Carlyle Group's or Defendants' trade secrets or other confidential information for which SSI has not met and cannot meet the requisite standard of need.

The non-party protections set forth in Federal Rule of Civil Procedure ("F.R.C.P.") 45 are designed to protect non-parties like the Carlyle Non-Parties from just the sort of discovery that SSI has served, and the Subpoenas should be quashed in their entirety.

## BACKGROUND

### The Nature of the Underlying Action

Essentially, the underlying dispute is between a franchisee of security solutions (SSI) and its franchisor (Sonitrol Corporation and its successors in interest (hereinafter, "Sonitrol")),

relating to SSI's purchase of a Sonitrol franchisee territory located in and around City of

Tacoma, Washington in the summer of 2005. Specifically, SSI and Sonitrol dispute whether, in

connection with SSI's purchase of the Tacoma territory, SSI was required to enter into a new

franchise agreement with Sonitrol, or alternatively, whether SSI was entitled to assume the 1977

agreement that already existed between SSI's predecessor in the Tacoma territory and Sonitrol.

SSI also alleges that Sonitrol negotiated in bad faith over the terms of a potential new franchise

agreement, with both SSI and its franchisee association, the Sonitrol National Dealers

Association. SSI further alleges that Sonitrol has been engaged in a scheme to devalue

franchisee territories generally, so that it might acquire these territories at below-market value.

Sonitrol and the other named defendants deny SSI's allegations and assert that SSI was

properly terminated from operating a Sonitrol franchise within the Tacoma territory based on its

failure to agree to and sign a new and current Sonitrol franchise agreement.

### The Carlyle Non-Parties' Connection to This Action and SSI's Subpoenas

SSI served one of the Subpoenas upon The Carlyle Group, which is the trade name for a

private global investment firm that originates, structures and acts as lead equity investor in

management-led buyouts, strategic minority equity investments, equity private placements,

consolidations and buildups, and growth capital financings. Other Subpoena recipients include

Carlyle Venture Partners II, L.P., an investment fund, and Carlyle Growth Partners, which is the

descriptive title for a team of investment professionals who advise Carlyle Venture Partners II,

L.P. among other funds. Mr. Coburn leads the United States division of the Carlyle Growth

Partners' team of investment professionals.

Until about June 6, 2008, Carlyle Venture Partners II, L.P. held an ownership interest,

along with other investors, in Defendant Sonitrol Holding LLC ("SHLLC"). Mr. Coburn was

responsible for the management of that fund's ownership interest in SHLLC.  The other Carlyle

Non-Parties – identified as The Carlyle Group and Carlyle Growth Partners – never had any

ownership of, direct connection to or involvement with SHLLC or its subsidiaries.

SHLLC owned 100% of all shares of stock in Defendant Sonitrol Holding Corp.

("SHC"), which in turned wholly owned as its subsidiary Defendant Sonitrol Corp.  On June 6,

2008, SHLLC sold all of its shares in SHC to Defendant The Stanley Works.  During Carlyle

Venture Partners II, L.P.'s period of ownership in SHLLC, Mr. Coburn served with others on the

Board of Directors and the Board compensation committee of Defendant SHC.  Mr. Coburn also

served with others on the Board of Directors of Defendant Sonitrol Corp.

SSI's Subpoenas purport to require each of the Carlyle Non-Parties to search for, review

and potentially produce, among numerous other things, documents they received or generated

through Carlyle Venture Partners II, L.P.'s capacity as an investor in SHLLC, and Mr. Coburn's

related capacity as an investment advisor or as a Board member of either SHLLC, SHC, or

Sonitrol Corp.  (See Lowe Decl., Exhibit A, Documents To Be Produced, Nos. 1, 2, 3, 4, 5, 6, 7,

8, 10 and 11.)[3]  These documents, to the extent any of the Carlyle Non-Parties possesses them at

all, were only obtained or generated by virtue of Carlyle Venture Partners II, L.P.'s and Mr.

Coburn's business relations with Defendants SHLLC, SHC, and/or Sonitrol Corp.  Thus, any

documents responsive to Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 10 and 11 would generally also be in

the possession of, and should be sought from, one or more of the named Defendants.

SSI's Subpoenas also purport to require each of the Carlyle Non-Parties to search for,

review and potentially produce both The Carlyle Group's and Defendants' trade secrets and

other confidential commercial information.  For example, the Subpoenas seek documents

---

[3]     Each of the four subpoenas directed to the Carlyle Non-Parties essentially requests the same categories of
documents.

reflecting all investment funds managed by The Carlyle Group, Carlyle Venture Partners II, L.P. or Carlyle Growth Partners, the dollar amounts of each investment within each fund, the identities of the companies in which the investments were made, regardless of whether they are related to Sonitrol or not, and the percentage amount of each investment made, by company, as a portion of the entire dollar value of each fund. (Id. at No. 9.) SSI's Subpoenas also require the Carlyle Non-Parties to search for, review and potentially produce documents reflecting their communications with the other investment funds and their advisors having an ownership interest in SHLLC concerning, without limitation as to subject matter, SHLLC, SHC, and/or Sonitrol Corp. (Id. at Nos. 12, 13, 14 and 15.) (Mr. Coburn's Subpoena requires him to search for, review and potentially produce his own communications concerning, without limitation as to subject matter, SHLLC, SHC, and/or Sonitrol Corp. (See Lowe Decl., Exhibit D, Documents To Be Produced, No. 12.).) Each of these requests (Nos. 9, 12, 13, 14 and 15) not only seeks the production of The Carlyle Group's trade secrets or other confidential commercial information. – they also seek the production of documents that have absolutely nothing to do with the underlying case.

Similarly, the Subpoenas requests for *all* documents relating to meetings of the SHC Board of Directors (see Lowe Decl., Exhibit A, Documents To Be Produced, No. 4), the Board's compensation, mergers and acquisition and audit committees (id. at Nos. 1-3) and any mergers or franchise acquisitions carried out by SHC since 2003 (id. at Nos. 7-8) would require production of Defendants' trade secrets or other confidential commercial information – and, again, the production of information that is irrelevant to the underlying case.

**<u>Defendants' Efforts to Resolve This Dispute Without Motion Practice</u>**

Prior to the return date for each Subpoena, counsel for Defendants and counsel for the Carlyle Non-Parties each advised counsel for SSI of their objections to the Subpoenas. Moreover, in an effort to avoid motion practice and undue burden on the Carlyle Non-Parties, Defendants agreed to produce several categories of documents sought by the Subpoenas despite their irrelevance to the issues in the litigation. On April 15, 2009, SSI agreed that it would not move to enforce the Subpoenas against the Carlyle Non-Parties until after it had reviewed Defendants' supplemental production.

On Tuesday, May 12, 2009, at 9:19 p.m., counsel for SSI sent a letter to counsel for Defendants stating that it considered Defendants' supplemental production "an inadequate substitute" for the documents sought by the Subpoenas, that Defendants' productions had not provided SSI access to all of the documents sought by the Subpoenas, and that SSI intended to file a motion to compel if it did not receive written confirmation by noon on Friday, May 15, 2009 that the Subpoenas would be complied with. (<u>See</u> Lowe Decl. at ¶ 19.) The next day, before Defendants had the opportunity to coordinate with any of the Carlyle Non-Parties or any other non-parties who received similar subpoenas, or to otherwise respond to the May 12th letter, counsel for SSI sent a letter to The Carlyle Group, making the same threat and imposing the same unreasonably short deadline. (<u>Id.</u> at ¶ 20.)

Between May 14, 2009 and May 22, 2009, the parties continued to communicate with respect to SSI's requests as counsel for Defendants again sought in good faith to resolve this dispute with SSI. (<u>Id.</u> at ¶¶ 21-23.) In the course of those communications, counsel for SSI conceded that one of the reasons it did not have access to some of the documents sought by the

Subpoenas through Defendants' productions was because such documents would not have been captured by the search terms that SSI provided to Defendants. (Id. at ¶ 21.)

During those communications, counsel for Defendants told counsel for SSI that, in the interest of resolving the matter without requiring the Carlyle Non-Parties to engage in motion practice, and notwithstanding its continued objections on the grounds of relevance and burden, the Carlyle Non-Parties would agree to review their hard copy files for documents responsive to the Subpoenas and to produce such documents to the extent that they did not contain confidential commercial information or were not otherwise subject to confidentiality agreements with third parties that precluded their disclosure. (Id. at ¶ 22.)

Ultimately, the Carlyle Non-Parties' and Defendants' efforts to resolve their disputes with SSI over the Subpoenas without resorting to motion practice have been unavailing, necessitating this motion to quash. (Id. at ¶ 23.)

## STANDARD

Under F.R.C.P. 45(c)(3)(A)(iv), the court from which the subpoena issued "must quash or modify a subpoena that ... subjects a person to undue burden." When causing a subpoena to be issued and served, an attorney must "take reasonable steps to avoid imposing undue burden or expense on" the subpoena recipient. See F.R.C.P. 45(c)(1); Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 218 F.R.D. 423, 424 (D. Del. 2003) ("It is incumbent upon counsel in the first instance to order discovery demands, particularly against non-parties, in such a way that the burdens of giving evidence are reasonable, under all of the circumstances presented."). Whether a subpoena subjects the recipient to an "undue burden" is an issue committed to the discretion of the trial court. Jones v. Hirschfeld, 219 F.R.D. 71, 74 (S.D.N.Y. 2003). A court should consider the subpoena recipient's status as a nonparty to the litigation and impose broader restrictions on the scope of discovery when a nonparty is targeted. Symetra Life Ins. Co. v. Rapid Settlements,

Ltd., No. 07-133, 2008 WL 597711, *2 (E.D. Pa. March 4, 2008). Factors to consider in the context of undue burden include relevance, the need of the propounding party for the documents requested, the breadth of the document requests, the time period covered by it, the particularity with which the documents are described and, of course, the burden imposed upon the producing party. Flatow v. The Islamic Republic of Iran, 196 F.R.D. 203, 206-207 (D.D.C. 2000).

In response to a subpoena, F.R.C.P. 45(c)(3)(B)(i) protects a nonparty from producing its confidential commercial information, unless the party serving the subpoena demonstrates a "substantial need" for the documents that cannot otherwise be met without undue hardship. Id. (Even if "substantial need ..." is shown, the serving party must also ensure that the subpoenaed party is reasonably compensated."). See also In re Vitamins Antitrust Litig., 267 F. Supp. 2d 738 (S.D. Ohio 2003) (nonparty supplier entitled to order quashing manufacturer's subpoena aimed to obtain certain of supplier's confidential commercial information where manufacturer had no ripe and substantial need for such information).

F.R.C.P. 26(c)(1)(G) similarly protects a party from producing its confidential commercial information where disclosure of such material might be damaging to the producing party and the harm associated with disclosure outweighs the need for access. Digital Equipment Corp. v. Micro Technology, Inc., 142 F.R.D. 488, 490 (D. Colo. 1992) (noting that "courts have consistently afforded greater protection to technical or trade information than to ordinary business information") (citations omitted).[4]

---

[4] A party has standing to challenge a subpoena issued to a third party provided it has a claim of privilege or a proprietary interest in the subpoenaed matter. See, e.g., U.S. v. Nachamie, 91 F. Supp. 2d 552, 558 (S.D.N.Y. 2000); Ponsford v. United States, 771 F.2d 1305, 1308 (9th Cir. 1985); Melder v. State Farm Mutual Automobile Ins. Co., No. 1:08-CV-1274-RWS-JFK, 2008 WL 1899569 (N.D. Ga. Apr. 25, 2008); Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551, 555 n.3 (N.D. Ga. 2001). Because the Subpoenas issued by SSI to each of the Carlyle Non-Parties seek, in part, Defendants' confidential commercial information, Defendants have standing to join in the Carlyle Non-Parties' motion.

## ARGUMENT

I. **REQUIRING THE CARLYLE NON-PARTIES TO SEARCH FOR, REVIEW AND PRODUCE DOCUMENTS OTHERWISE DISCOVERABLE FROM DEFENDANTS WOULD IMPOSE UNDUE BURDEN.**

SSI's Subpoenas would require each of the Carlyle Non-Parties to search for, review and

potentially produce:

- SHC compensation committee documents, including minutes, resolutions, agendas, financial statements, committee materials, and presentations materials (Lowe Decl., Exhibit A, Documents To Be Produced, No. 1);

- SHC mergers and acquisitions committee documents, including minutes, resolutions, agendas, financial statements, committee materials, and presentation materials (Id., No. 2);

- SHC audit committee documents, including minutes, resolutions, agendas, financial statements, committee materials, agendas, and presentation materials (Id., No. 3);

- SHC Board of Director documents, including minutes, packets, agendas, resolutions, financial statements, board materials, and presentation materials (Id., No. 4);

- Documents relating to each of the Carlyle Non-Parties' ownership interest in SHC (Id., No. 5);

- Documents relating to each of the Carlyle Non-Parties' sale of its ownership interest in SHC (Id., No. 6);

- All documents relating to mergers carried out by SHC (Id., No. 7);

- All documents relating to franchisee acquisitions carried out by SHC (Id., No. 8);

- All documents relating to Kevin Dowd (Mr. Dowd was the Chief Executive Officer ("CEO") of Sonitrol Corp. during the relevant time period) (Id., No. 10); and

- All documents relating to Todd Leggett (Mr. Leggett was a Vice President of Sonitrol Corp. during the relevant time period) (Id., No. 11).

To the extent that any of these categories of documents may be at all relevant to the

underlying dispute, a number of responsive documents are in Defendants' possession, custody

and control. If such documents are not protected from disclosure pursuant to privilege or otherwise, SSI *has sought* – and should continue to seek – production from Defendants. (See Lowe Decl. at ¶¶ 10-11.) Indeed, to a large extent, Defendants have already produced to SSI responsive documents, including, for example, the majority of Board meeting minutes, Board committee meeting minutes, franchise acquisition documents, documents reflecting the sale of Defendant SHC to Defendant The Stanley Works, and voluminous electronically-stored information from the laptops of Kevin Dowd, Sonitrol's former CEO, and Todd Leggett, Sonitrol's former Vice President in operations, based upon search terms provided by SSI. (See id. at ¶¶ 13-18.)

If SSI takes issue with the scope of Defendants' discovery responses on these subject matters, the appropriate mechanism for addressing its disagreement with Defendants is through "meet and confer" teleconferences and, if necessary motion practice, with Defendants in the District Court wherein the underlying case is pending. See, e.g., Melder v. State Farm Mutual Automobile Ins. Co., No. 1:08-CV-1274-RWS-JFK, 2008 WL 1899569, at *2-3 (N.D. Ga. Apr. 25, 2008). Indeed, a discovery dispute process is already underway in that Court. On April 3, 2009, SSI and Defendants held a "meet and confer" teleconference to address SSI's desire for additional Board, committee and franchisee acquisition materials, and Defendants' objections to producing additional documents relating to these topics. Simultaneous with or immediately following this "meet and confer," SSI apparently prepared and served these Subpoenas on the Carlyle Non-Parties as a means of sidestepping its discovery dispute with Defendants and burdening a party with no dog in the fight. Since then, as summarized above, Defendants have produced to SSI additional documents within the scope of this Subpoena, and Defendants and SSI continue to "meet and confer" on any remaining issues relating to the scope of Defendants'

production.  (See Lowe Decl. at ¶¶ 15-18, 24-25.)  Under these circumstances, where the vast

majority (if not all) of the documents SSI seeks from each of the Carlyle Non-Parties are

irrelevant to the underlying dispute and a number of the requested documents are in the

possession of Defendants and, if discoverable, should be produced by Defendants, subjecting any

of the Carlyle Non-Parties to the onerous burden of searching for, reviewing, and potentially

producing documents responsive to the Subpoenas would be entirely undue.

Accordingly, SSI should look to Defendants rather than to any of the Carlyle Non-Parties

for documents responsive to Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 10 and 11.  As to each of the

Carlyle Non-Parties, these requests should be quashed.  See F.R.C.P. 45(c)(3)(A)(iv) ("On timely

motion, the issuing court must quash or modify a subpoena that …  subjects a person to undue

burden.").

## II.  SSI HAS NO SUBSTANTIAL NEED FOR THE CARLYLE GROUP'S CONFIDENTIAL COMMERCIAL INFORMATION NOR CAN IT DEMONSTRATE A NEED FOR DEFENDANT'S CONFIDENTIAL COMMERCIAL INFORMATION THAT OUTWEIGHS THE POTENTIAL HARM TO DEFENDANTS.

### A.  The Carlyle Group's Confidential Commercial Information

SSI's Subpoenas seek additional documents from the Carlyle Non-Parties, as follows:

- Documents sufficient to reflect all investment funds managed by that entity (or for Mr. Coburn, any of those entities), the companies in which each fund is invested, the dollar amounts of each of the investments, and the percentage amount of each investment as a portion of the entire dollar value of each fund (Lowe Decl., Exhibit A, Documents To Be Produced, Nos. 9(a) and 9(b)); and

- All documents reflecting communications among the equity owners of SHLLC concerning SHLLC, SHC, Sonitrol Corp. and its predecessors and/or successors (Id., Nos. 12, 13, 14 and 15).[5]

---

[5]    As indicated above, the subpoena for Mr. Coburn seeks all documents reflecting his communications concerning SHLLC, SHC, Sonitrol Corp. and its predecessors and/or successors.  (See Lowe Decl., Exhibit D, Documents To Be Produced, No. 12.)

Information sufficient to reflect the investment funds managed by any of the Carlyle entities and the companies in which the funds are invested – while palpably irrelevant to the underlying dispute between SSI and Defendants – is publicly available on The Carlyle Group's website. Request No. 9 otherwise seeks the production of The Carlyle Group's trade secrets and other confidential commercial information. Undeniably, for a private equity firm such as The Carlyle Group, information such as the relative dollar and percentage amounts for each of its funds' investments is proprietary and highly confidential. As was well-put by one court, such trade secrets are the very "lifeblood of [The Carlyle Group's] financial well being." In re Vitamins Antitrust Litig., supra, 267 F. Supp. 2d at 741-2. There is no justification, let alone the requisite "substantial need," to overcome the presumptive protection afforded to The Carlyle Group's trade secrets and other confidential commercial information. Accordingly, all requests for fund information should be quashed.

Similarly, the Carlyle Non-Parties' communications with the other investment funds holding an ownership interest in SHLLC (Request Nos. 12-15) are also out of bounds. Together, these equity owners managed their collective investment to realize a profitable return, and their internal communications are proprietary, highly confidential and irrelevant to the present franchise dispute. Indeed, SSI failed to limit its requests for these communications to any discrete set of subjects arguably having any reasonable relationship to the issues in the underlying lawsuit. As such, SSI violated F.R.C.P. 45(c)(1), and if the subpoenas were enforced, SSI would cause each of the Carlyle Non-Parties undue burden. Id. ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense . . . ."); see also Section I, supra.

Moreover, SSI cannot demonstrate the requisite substantial need for The Carlyle Group's confidential commercial information. None of the Carlyle Non-Parties is a party to SSI's lawsuit and the compositions of investments within the funds they managed have zero relevance to the underlying lawsuit. Also, while some subset of Carlyle Venture Partners II, L.P.'s or Mr. Coburn's confidential communications with other SHLLC investors arguably might be relevant on some point in the underlying dispute, SSI has failed to reasonably tailor its requests for these potentially relevant communications to avoid undue burden on the Carlyle Non-Parties. Moreover, SSI cannot demonstrate a "substantial need" for these confidential communications *that cannot otherwise be met without undue hardship*. For example, SSI could serve discovery requests upon Defendants seeking documents of an identical nature (to the extent SSI has not already done so). Defendants, not any of the Carlyle Non-Parties, ought to be the source for this discovery, if SSI is entitled to it.

Because Request Nos. 9, 12, 13, 14 and 15 seek irrelevant documents and the Carlyle Non-Parties' production of The Carlyle Group's trade secrets and other confidential commercial information, for which SSI cannot demonstrate the requisite "substantial need . . . that cannot be otherwise met without undue hardship," these requests should also be quashed. F.R.C.P. 45(c)(3)(B)(i) and (C)(i); and In re Vitamins Antitrust Litig., supra.

## B.    Defendants' Confidential Commercial Information

Defendants' Board and compensation, mergers and acquisitions and audit committee materials, such as meeting packets, presentation materials and financial statements sought by Request Nos. 1-4, include Defendants' proprietary and confidential information. The same is true with respect to many of the documents relating to any mergers or acquisitions carried out by Defendants sought through Request Nos. 7-8. For example, the acquisition materials include,

among other confidential information, information relating to the use of technology and sales person data, the disclosure of which could cause Defendants competitive harm. Such materials also include the negotiated purchase price for the deal and customer information that, if made available, would raise the curtain on Defendants' negotiation strategy such that future negotiations would no longer be at arms-length. Because of the confidential information contained within the mergers and acquisitions documents, not only of Defendants but also of the corresponding merger or acquisition parties, many of these documents are subject to confidentiality agreements that may preclude disclosure.

Defendants have already produced to SSI some information responsive to these requests. SSI has not demonstrated, and cannot demonstrate, a need for the remaining documents that outweighs the potential harm to Defendants from disclosure. Accordingly, these requests should be quashed for this reason, as well as due to the undue burden on the Carlyle Non-Parties, as set forth in Section I above.

<strong><u>CONCLUSION</u></strong>

For the reasons set forth herein, each of the Carlyle Non-Parties and Defendants respectfully request that this Court grant their Joint Motion to Quash Plaintiff's Subpoenas.

Date:   May 27, 2009                      Respectfully,

                                          LATHAM & WATKINS LLP
                                          _____
                                          By: Allen M. Gardner, DC Bar ID # 456723
                                          E-mail: allen.gardner@lw.com
                                          555 Eleventh Street, N.W., Suite 1000
                                          Washington, DC  20004
                                          Telephone:  (202) 637-2200
                                          Facsimile:  (202)637-2201

                                          *Attorneys for Non-Parties/Movants, identified as:*
                                          *The Carlyle Group, Carlyle Venture Partners II, Carlyle*
                                          *Growth Partners, and Brooke B. Coburn*

14

STRADLEY RONON STEVENS & YOUNG, LLP

_____

Mark E. Chopko, DC Bar ID # 410353
E-mail: mchopko@stradley.com
1250 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Telephone: (202) 822-9611
Facsimile: (202) 822-0140

Jeffrey D. Grossman
E-mail: jgrossman@stradley.com
Christopher J. Lowe
E-mail: clowe@stradley.com
One Commerce Square, Suite 2600
2005 Market Street
Philadelphia, PA 19103-7098
Telephone: (215) 564-8000
Facsimile: (215) 564-8120

*Attorneys for Defendants*
*Sonitrol Corporation, Sonitrol Holding Corp., Sonitrol*
*Holding, LLC, The Stanley Works, Stanley Security*
*Solutions, Inc., SecurityCo. Solutions, Inc., Stanley*
*Convergent Security Solutions, Inc., and Sonitrol*
*Franchise Company, LLC*

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2009, I served the foregoing JOINT MOTION OF THE NON-PARTIES IDENTIFIED AS THE CARLYLE GROUP, CARLYLE VENTURE PARTNERS II, CARLYLE GROWTH PARTNERS, BROOKE COBURN AND OF DEFENDANTS TO QUASH PLAINTIFF'S SUBPOENAS, with supporting BRIEF and proposed ORDER, on the following party at the following addresses by mailing to them a true and correct copy thereof, via facsimile and e-mail:

Renée E. Rothauge, Esquire
renee.rothauge@bullivant.com
Susan L. Ford, Esquire
susan.ford@bullivant.com
C. Todd Norris, Esquire
todd.norris@bullivant.com
BULLIVANT HOUSER BAILEY PC
888 S.W. Fifth Avenue, Suite 300
Portland, OR 97204-2089
Facsimile: (503) 295-0915

*Attorneys for Plaintiff, Sound Security, Inc.*

Mark E. Chopko, DC Bar ID #410353
E-mail: mchopko@stradley.com
STRADLEY RONON STEVENS & YOUNG, LLP
1250 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Facsimile: (202) 822-0140

Jeffrey D. Grossman
E-mail: jgrossman@stradley.com
Christopher J. Lowe
E-mail: clowe@stradley.com
STRADLEY RONON STEVENS & YOUNG, LLP
One Commerce Square, Suite 2600
2005 Market Street
Philadelphia, PA 19103-7098
Facsimile: (215) 564-8120

*Attorneys for Defendants Sonitrol Corporation, Sonitrol Holding Corp., Sonitrol Holding, LLC, The Stanley Works, Stanley Security Solutions, Inc., SecurityCo. Solutions, Inc., Stanley Convergent Security Solutions, Inc., and Sonitrol Franchise Company, LLC*

Allen M. Gardner

L # 917477